**In re Thomas Roger ADAIR.**

**MACO FEDERAL CREDIT UNION, Plaintiff,**

v.

**Thomas Roger ADAIR, Defendant.**

**Bankruptcy No. B78–400R.**

United States Bankruptcy Court, N. D. Georgia, Rome Division.

Aug. 20, 1980.

HUGH ROBINSON, Bankruptcy Judge.

### ORDER

Plaintiff's complaint to determine the dischargeability of a debt filed on December 22, 1978 initiated the dispute involved herein. This matter came on regularly to be heard before this Court on January 16, 1980. Having heard the testimony presented at said hearing and having considered the brief submitted on Plaintiff's behalf and the pleadings on file, the Court makes the following findings and conclusions.

### FINDINGS OF FACT

The findings of fact are adopted substantially from the stipulation of facts presented to this Court at the hearing of January 16, 1980.

1. Thomas Roger Adair, ("Debtor") secured a loan from Maco Federal Credit Union ("Plaintiff") on May 4, 1977, to purchase a 1977 Volkswagen convertible, using same and a 1974 Buick as collateral. The dischargeability of this loan debt is not disputed.

2. Debtor secured a loan from Plaintiff on February 3, 1978, for the stated purpose of obtaining car insurance, car repairs, and paying an outstanding loan to Plaintiff.

3. The following debts were listed on Debtor's loan application of February 2, 1978:

Fairway Hills, Apts.
Marietta $165.00 (monthly rent)
First Bank & Trust,
Marietta $185.00
Rich's, Atlanta $500.00
Penney's, Atlanta $150.00
Postal Finance, Iowa $500.00

4. Debtor secured a loan consolidation from Plaintiff on May 29, 1978.

5. The following debts were listed on Debtor's loan application of May 29, 1978:

Fairway Hills Apartments,
Marietta $165.00 (monthly rent)
First Bank & Trust,
Marietta $300.00
Rich's $500.00

6. Debtor's signature appears on both of the loan applications.

7. The Court has taken judicial notice of the bankruptcy schedules filed by Debtor with his voluntary petition for bankruptcy on September 29, 1978.

8. Listed on Schedules A–2 and A–3 of the bankruptcy schedules are several outstanding debts incurred before the preparation of either one or both of the loan applications which were not disclosed by Debtor on these applications.

9. The amounts due to some creditors which were disclosed by Debtor on the loan applications are significantly lower than the amounts said to be due to the same creditors on the bankruptcy schedules.

10. A secured debt of $1,200.00 due to MCC Financial Service on a debt incurred in April, 1977 which is listed in Schedule A–3 was not disclosed on the February loan application.

11. The following debts which appear on Schedule A–3 were not disclosed on the February loan application:

(a) Balance of $350.00 owed to Commercial Bank of Cobb County incurred in December, 1977;

(b) Balance of $27.00 owed to Kennestone Hospital incurred in December, 1977;

(c) Balance of $100.00 owed to Dr. Alan Prince incurred in December, 1977; and

(d) Balance of $97.06 owed to Richway incurred in April, 1975.

12. The following substantial discrepancies appear between the amounts due listed in the schedules and the amounts due listed in the February loan application:

(a) The debt owed to Postal Finance is stated to be $500.00 in the loan application. Schedule A–3 reveals a balance of $1,628.00 due to Postal Finance on a debt incurred in September, 1976.

(b) A debt of $185.00 owed to First Bank & Trust, Marietta is disclosed in the loan application. Schedule A–3 shows a balance of $314.05 owed to First Bank & Trust Company on two notes incurred November, 1977 and April, 1977 respectively.

13. The following secured debts which appear in Schedule A–2 were not listed on the May loan application:

(a) $1,200.00 balance due to MCC Financial Service on a debt incurred April, 1977;

(b) $800.00 balance due to Warren A. Richardson on a debt incurred in April, 1978.

14. The following unsecured debts which appear in Schedule A–3 were not disclosed in the application:

(a) Balance of $350.00 owed to Commercial Bank of Cobb County incurred in December, 1977;

(b) Balance of $545.00 due to Edward J. Stephens incurred in April, 1978;

(c) Balance of $27.00 due to Kennestone Hospital incurred in December, 1977;

(d) Balance of $1,628.00 owed to Postal Finance Company on debt incurred in September, 1976;

(e) Balance of $100.00 due to Dr. Alan Prince incurred in December 1977; and

(f) Balance of $97.06 due to Richway incurred in April, 1975.

15. The loan consolidation of May 29, 1978 was secured by the 1977 Volkswagen.

16. Plaintiff agreed to release the 1974 Buick as collateral for the May loan consolidation.

17. On May 26, 1978, three days before Debtor's loans from Plaintiff were consolidated, the Volkswagen suffered damage estimated at $450.00 as a result of a collision.

18. Debtor was driving the Volkswagen at the time of the accident.

19. Debtor was subsequently charged with failure to yield the right of way and failure to maintain automobile insurance.

20. The Volkswagen was not insured at the time Plaintiff repossessed said vehicle.

21. Plaintiff was not informed that the value of the Volkswagen had been impaired when Debtor applied for the May loan consolidation.

22. The value of $3,550.00 was attributed to the Volkswagen on the loan application dated May 29, 1978.

23. Plaintiff later sold the Volkswagen for $3,250.00 after repairs.

24. At the time of the hearing the balance due on Debtor's account with Plaintiff was $912.23, plus interest of $36.49, for a total of $948.72.

25. Plaintiff accelerated Debtor's loan on September 1, 1978 due to nonpayment.

26. On September 29, 1979 Debtor filed a voluntary petition under Chapter VII of the Bankruptcy Act.

27. Plaintiff filed a complaint to determine the dischargeability of Debtor's indebtedness to Plaintiff on December 22, 1978.

## APPLICABLE LAW

Plaintiff asserts two theories of recovery. It is contended that Debtor violated 18 U.S.C. § 1014 by making false loan applications and by overvaluing security on the applications. Alternatively Plaintiff alleges that the loan debt of February 3, 1978 and the loan consolidation of May 29, 1978 are nondischargeable under Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2).

Under 18 U.S.C. § 1014 it is illegal to knowingly make a false statement or report or to overvalue security for the purpose of

influencing the action of certain specifically enumerated financial institutions including federal credit unions on, inter alia, an application, loan, extension, or release or substitution of security. Because bankruptcy courts are not invested with the power to enforce the criminal laws of the United States, this Court finds 18 U.S.C. § 1014 inapplicable in this case.

The Court will now consider Plaintiff's theory of recovery based on the provisions of Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2).

Section 17(a)(2) provides as follows:

"a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another; ..."

In dealing with a case of this kind the Court is guided by the maxim that exceptions to discharge are construed liberally in favor of the debtor and strictly against the creditor's objections. *In re: Knight*, 421 F.Supp. 1387 (M.D.La.1976) affirmed 551 F.2d 861 and 862 (5th Cir. 1977); *In re: Dolnick*, 374 F.Supp. 84 (N.D.Ill. 1974). The party objecting to dischargeability has the burden of proof, admittedly a hard one to shoulder. Rule 407 of the Bankruptcy Rules.

Each of the elements of Section 17(a)(2) must be satisfied before a court can determine that a debt is nondischargeable. *In re: Mitchell*, 1 BCD 1273 (N.D.Ga.1975). A creditor must prove that: (1) the debtor made representations; (2) at the time he knew they were false; (3) the representations were made with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; and

(5) the creditor sustained the alleged loss and damage as a proximate result of the representations having been made. *In re: Houtman*, 568 F.2d 651 (9th Cir. 1978); *In re: Hemphill*, 1 BCD 1181 (N.D.Ga.1975); *In re: Mathis*, 1 BCD 35 (N.D.Ga.1973).

Debtor's signature appears on both the February and May loan applications beneath a printed statement which reads, "I hereby certify the foregoing statements to be true, accurate and complete to the best of my knowledge and belief, and are given as an inducement to Maco Federal Credit Union to make the requested loan..." It cannot be argued that these applications are not written representations made by Debtor concerning his financial condition.

Plaintiff argues that the loan application of February 2, 1978 is false for the reason that Debtor failed to disclose all of his debts and for the reason that the loan proceeds were not used for the stated purposes for which the loan was obtained.

It is also alleged that the loan application dated May 29, 1978 is false for the reason that Debtor induced Plaintiff to release the 1974 Buick as collateral knowing that the remaining collateral was insufficient to cover the loan and that its value had been impaired.

This Court has examined the two loan applications and the bankruptcy schedules and has discovered significant omissions of obligations and understatements of amounts due to creditors in the loan applications.

Omission of information from a financial statement may constitute a false representation if as a result of the omission the financial statement does not accurately reflect the debtor's financial condition. *In re: Cross*, 1 BCD 615 (N.D.Calif.1977). In *In re: Pacheco*, 2 BCD 1723 (D.Conn.1977) the discharge of a debt was denied where the debtor failed to disclose a substantial amount of his indebtedness. The same result was reached in *In re: Mitchell*, 1 BCD 1273 (N.D.Ga.1975), where the debtor had obtained property by means of a financial statement found by the Court to be replete

with inaccuracies, exaggerations and omissions.

The Court concludes that the inaccuracies in and omissions from the two loan applications are such that a creditor relying thereon would not be apprised of Debtor's true financial condition.

The other allegations concerning the falsity of these loan applications will be briefly addressed.

Plaintiff argues that the February loan application is false for the reason that the funds were not used to purchase automobile insurance. The evidence strongly suggests that the loan proceeds were not used to obtain car insurance in contravention of one of the stated purposes for acquiring the loan. However an outstanding loan to Plaintiff was satisfied from the loan proceeds in accordance with the stated purposes. There is no evidence that the remaining funds were used for purposes other than those specified in the loan application. Therefore the Court cannot conclude that Debtor misled Plaintiff with regard to the uses to which the loan proceeds were to be applied.

Plaintiff also argues that the May loan application is materially false for the reason that the security offered was overvalued. The collateral consisted of a 1977 Volkswagen valued at $3,550.00 on the application. Three days prior to the date of the application the Volkswagen sustained damages estimated at $450.00 as a result of a collision. Plaintiff was not informed of the damaged condition of the Volkswagen. The car was later sold by Plaintiff for $3,250.00 after repairs. This Court concludes that the Volkswagen was overvalued in the loan application.

Because a number of Debtor's obligations were not disclosed and other debts were understated, and because the Volkswagen was overvalued, the Court concludes that both the February loan application and the May application are materially false.

One who displays a reckless disregard for the truth may be charged with knowledge of the falsity of a statement. *In re: Houtman, supra.* Debtor exhibited a marked recklessness in the preparation of his loan applications. A substantial number of obligations were omitted from the applications, and some debts were significantly understated. Furthermore Debtor neglected to inform Plaintiff of the damaged condition of the Volkswagen offered as collateral in the loan application of May 29, 1978. To entertain the idea that Debtor was unaware of the car's damaged condition stretches the imagination beyond comfortable bounds. The Court concludes that Debtor knew or should have known of the falsity of the loan applications.

It is not sufficient to prove only that the debtor knowingly made a false written statement concerning his financial condition, the statement must have been made with intent to deceive. Section 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2). There must be fraud involving moral turpitude or intentional wrong. *In re: Huie*, 3 BCD 81 (N.D.Ga.1977); 1 A Collier on Bankruptcy (14th Edition) ¶ 17.-16[3], p. 1634. This intent may be established by showing that debtor prepared his statement carelessly or recklessly. *In re: Mitchell, supra.* The Court concludes that the record reveals such carelessness on Debtor's part in connection with the preparation of the loan applications that he may be fairly charged with the intent to deceive Plaintiff.

Another element which must be established by a creditor objecting to the dischargeability of a debt is reliance on the false statement as a basis for extending credit to the debtor. *Bazemore v. Stehling*, 396 F.2d 701 (5th Cir. 1968). Failure to prove reliance is fatal to the challenge to the dischargeability of a debt under Section 17(a)(2). *In re: Huie, supra.*

The only evidence on the element of reliance is the testimony of Ms. Lee C. Nation, assistant general manager at the Plaintiff-credit union. As assistant general manager it is Ms. Nation's function to take information from a loan applicant and relay it to a loan officer. She does not make

decisions as to whether a loan should be granted.

Ms. Nation testified with regard to Plaintiff's loan making procedures. A person seeking a loan from Plaintiff fills out an application which is submitted to a loan officer for approval. The form application requests information pertinent to the applicant's financial condition. Customarily the information provided by the applicant is relied on by the loan officer when a decision is made on the approval or disapproval of the loan application. Plaintiff maintains a file on each member of the credit union. Records of loan applications and promissory notes are kept in these files which are available for examination by loan officers.

According to Ms. Nation's testimony, when a person applies for a loan his file is reviewed by a loan officer before a decision on the application is made. However, she did not know whether this procedure had been followed with respect to any of Debtor's loan applications.

The Court finds that a general assertion that the information contained in a loan application is usually relied on by a loan officer in making a decision to grant or deny a loan is insufficient to prove that a particular loan application was, in fact, relied on when credit was extended to an applicant.

Ms. Nation was unable to testify that Debtor's loan applications of February 2, 1978 and May 29, 1978 had actually been considered and relied on when credit was extended by Plaintiff to Debtor. Therefore the Court concludes that Plaintiff failed to prove the element of reliance.

At the hearing held January 16, 1980 Debtor made a motion for directed verdict on the ground that Plaintiff failed to prove the elements of its case. Debtor argues that Plaintiff did not offer any testimony on the value of the Volkswagen as of May 29, 1978 and therefore failed to prove that the car had been overvalued on the application. It is further argued that Plaintiff failed to prove intent to deceive on the part of Debtor and reliance on the loan applications on the part of Plaintiff.

Generally the standard applied in determining the merits of a motion for directed verdict is whether there is substantial evidence to create a jury question. *Tillman v. Travelers Indemnity Company*, 506 F.2d 917 (5th Cir. 1975). A motion for directed verdict is granted only when the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict. *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc); *Audirsch v. Texas & Pacific Ry. Co.*, 195 F.2d 629 (5th Cir. 1952).

This Court has concluded that Debtor's intent to deceive Plaintiff and the overvaluation of the Volkswagen have been established by the evidence. However Plaintiff failed to prove the element of reliance, an element which must be established before a party challenging the dischargeability of a debt under Section 17(a)(2) can prevail. For this reason the Court concludes that the evidence in this case points so strongly in favor of Debtor that a verdict against Debtor would not be authorized.

## CONCLUSIONS OF LAW

1. The loan applications of February 2, 1978 and May 29, 1978 given by Debtor to Plaintiff were materially false.

2. Debtor knew or had reason to know of the falsity of the two loan applications.

3. Debtor obtained property from Plaintiff in that Debtor was granted a loan and a loan consolidation by Plaintiff.

4. Both of the loan applications were prepared with such carelessness and recklessness that Debtor may fairly be charged with intent to deceive.

5. There is no evidence that Plaintiff, in fact, relied on either the application of February 2, 1978 or the application of May 29, 1978 when credit was extended to Debtor. Therefore Plaintiff failed to sustain the burden of proof on the element of reliance.

6. The evidence in the case points so strongly in favor of Debtor that a verdict

against Debtor would not be authorized. It is therefore

ORDERED that Debtor's motion for directed verdict shall be and same is hereby granted; and it is further

ORDERED that the debts owed by Debtor to Plaintiff shall be and same are hereby discharged.