In re: **Richard McClellan DAWSON Nathania Strange Buchanan Ryder Dawson, Debtors.**

**NATIONWIDE FINANCIAL CORPORATION, a/k/a Citicorp Person-to-Person Financial Services, Inc., a Colorado corporation, Plaintiff,**

v.

**Richard McClellan DAWSON and Nathania Strange Buchanan Ryder Dawson, Defendants.**

**Bankruptcy No. 80–00119. Adv. No. 80–0057.**

United States Bankruptcy Court, E. D. Virginia, Richmond Division.

Dec. 10, 1981.

---

Stephen A. Isaacs, Paul, Smith & Blank, Richmond, Va., for plaintiff.

Hudson Branham, Richmond, Va., for defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing by Nationwide Financial Corporation, a/k/a Citicorp Person-to-Person Financial Services, Inc. (Nationwide), of a Complaint to determine the dischargeability of a debt incurred by Richard McClellan Dawson and Nathania Strange Buchanan Ryder Dawson (Dawson). Trial was held on the Complaint on April 24, 1981. Upon the foregoing the Court makes the following determination.

### STATEMENT OF FACTS

In May, 1978 the Dawsons applied with Nationwide for a loan in the initial amount of $7,500.00. The Dawsons signed a "Ready Credit Application" (Application) on May 15, 1978 and Nationwide received the application on May 18, 1978.

The Dawsons were required to list any outstanding loans on the application. Nationwide uses the applications to determine whether to extend credit to applicants. Nationwide verifies the information given on the applications by making independent checks of each applicant's financial status by checking with credit bureaus to see if any credit is undisclosed on the finance statements. Nationwide found no discrepancy between the information provided on the Dawsons' application and the information which it received through its credit check. Once Nationwide has verified an application through its credit check it runs what is called a "Cash Flow Sheet". Nationwide computes an applicant's monthly income and subtracts from that amount the applicant's total expenses as noted on the application. By this process Nationwide determines whether an applicant can afford the monthly payments on a loan if Nationwide decides to extend credit.

The Dawsons listed only $16,000.00 in debts and $650,000.00 in assets on their application for credit. The Dawsons omitted debts to 18 creditors in the amount of $192,000.00. The Dawsons' explanation detailing why those 19 debts were omitted from the

application was inconsistent. Dawson explained there was not enough room on the application to list all of his debts and that he attached an addendum to the application listing those 19 debts and sent that in with the application. At another point in his testimony Dawson explained that at a later time he sent the addendum attached to tax returns which Nationwide requested.

Nadine Broom, Collection Supervisor with Nationwide, testified that Nationwide never received the addendum. Ms. Broom explained the uniform criteria which Nationwide's employees use in determining whether to extend a loan to an applicant. Based on that criteria Ms. Broom testified that Nationwide would not have extended a loan to the Dawsons if it had known of the unreported debts totaling $192,000.00 which the Dawsons owed other creditors.

William Martin was the loan officer for Nationwide who authorized the loan in May, 1978. He was not an employee of the company at the time of trial and did not testify at trial.

Ms. Broom testified that the initial amount of the loan was $7,500.00. More credit was extended to the Dawsons at a later time and some of the balance was repaid. At the time of trial the balance remaining was $7,958.18. With interest included that amount came to $10,510.02.

At the conclusion of the trial the Court made findings of fact that credit was extended after receipt of the application and the Form 1040 tax information, that the application was substantially false and was intentionally made, and that Nationwide suffered a loss in the transaction.

## CONCLUSIONS OF LAW

A discharge in bankruptcy does not discharge a debtor from any debt "for obtaining . . . an extension, renewal, or refinance of credit by . . . (B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit reasonably relied; and (iv) that the debtor caused

to be made or published with the intent to deceive . . ." 11 U.S.C. § 523(a)(2).

In the instant case it is clear that the Dawsons submitted a false financial statement to Nationwide which represented that the Dawsons had outstanding debts in the amount of $16,000.00, $192,000.00 less than the actual amount in which they were indebted to other creditors. The Dawsons omitted on the application 19 debts which they owed 18 creditors. The Court can clearly infer from the evidence proffered at trial that the Dawsons submitted the application with the intent to deceive Nationwide in order to obtain the extension of credit which they sought.

Although William Martin, the loan officer who authorized the loan to the Dawsons, did not testify at the trial, Nadine Broom explained the method which Nationwide used to determine whether a loan should be granted to an applicant. In light of the uniform criteria which Nationwide uses in determining when to extend credit to applicants, Ms. Broom testified that if Nationwide had known of the Dawsons' additional debts, it would not have extended the loan to the Dawsons. Nationwide argues that the objecting creditor then need only show that the debtors submitted a false financial statement to establish a *prima facie* case. *Industrial Bank of Commerce v. Bissell*, 219 F.2d 624, 625 (2d Cir. 1955). It further argues that those two factors create an inference of reliance and are sufficient to establish the plaintiff's *prima facie* case. *In re Gem Sleepwear Company*, 461 F.Supp. 644, 646 (S.D.N.Y.1978). *See also, Morris Plan Industrial Bank of New York v. Parker*, 143 F.2d 665 (D.C.Cir.1944); *In re Berberich*, 190 F.2d 53 (7th Cir. 1951).

Nationwide asserts it established its *prima facie* case and that the Dawsons have the burden of rebutting the inference of reliance. The Second Circuit held in *Federal Provision Company v. Ershowsky*, 94 F.2d 574 (2d Cir. 1938) at page 575 ". . . the bankrupt may no longer remain inert, standing upon the infirmities of the evidence against him; once a *prima facie* case

appears, the laboring oar passes to his hands and he must bring the boat to shore."

Each of these cases was based upon § 14(c) of the Bankruptcy Act which provided "That if, upon the hearing of an objection to a discharge, the objector should show to the satisfaction of the Court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, upon this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any such acts shall be upon the bankrupt." This section involved the granting of discharges to debtors and did not concern the dischargeability of any particular debt. Furthermore, that particular provision of § 14(c) was modified in 1973 by the adoption of Bankruptcy Rule 407 which states "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection." Rule 407 continues to remain in effect as to issues of discharge under 11 U.S.C. § 727 but it is not made applicable to issues of dischargeability under 11 U.S.C. § 523.

A plaintiff must prove all the elements of 11 U.S.C. § 523(a)(2) to render a debt nondischargeable in bankruptcy. Absent proof of each element this Court is precluded from making a determination that a debt is nondischargeable. Each of these elements must be proved by clear and convincing evidence and not by a preponderance thereof. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975). The plaintiff faces a formidable task but that is the intention of the dischargeability legislation. The Supreme Court in addressing the issue of dischargeability has stated that the purpose of the Bankruptcy Act is to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Company v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

In the instant case Ms. Broom, Plaintiff's employee, testified it is Nationwide's routine to investigate the veracity of loan applications. She also testified that it is the company's routine to extend loans to applicants only when certain requirements have been complied with. Ms. Broom testified as to the Company's routine; however, she was not the loan officer who authorized the loan to the Dawsons and she was not able to testify whether the loan officer who authorized the loan actually followed that routine in this case and did rely upon the application in extending the loan. Allowing creditors to establish the element of reliance solely by showing the course of conduct routinely entered into by the creditor would put a premium on the concealment of witnesses when the authorizing loan officer may not actually have relied on the application in granting the loan.

The burden of persuasion still remains upon the plaintiff to show by clear and convincing evidence each element in a dischargeability matter. Although Ms. Broom's testimony was sufficient to show the company's normal course of conduct upon its receipt of the application, that testimony standing alone is, in the opinion of this Court, insufficient to meet that clear and convincing standard.

*In re Adair,* 17 B.R. 456 (Bkrtcy.N.D.Ga., 1980), presents a factual situation similar to that which this Court faces in the instant case. In *Adair* the court found that the inaccuracies and omissions in a loan application were such that a creditor relying on them would not be apprised of the debtor's true financial condition and that the application was materially false in understating the debtor's liabilities and in overstating the valuation of the debtor's assets. The court further found that the debtor knew or should have known of the falsity of the loan application and that the application was prepared with such carelessness or recklessness that the debtor could be charged with an intent to deceive.

The *Adair* court noted that failure to prove reliance is fatal to the challenge to the dischargeability of a debt. In that case the only evidence introduced to show reliance was the testimony of an officer of

the corporation whose duty it was to take information from a loan application and relay it to a loan officer. The officer, Ms. Lee C. Nation (Nation), assistant general manager, explained the plaintiff's loan making procedures but testified that she was not involved in the decision whether the loan request should be granted in this instance. Nation testified that the application requested information pertinent to the applicant's financial condition and that customarily the information provided by the applicant was relied upon by the loan officer when deciding whether to extend a loan to an applicant. Nation could not testify whether this procedure was followed when the plaintiff extended a loan to Adair. The Court stated that the assertion that the information contained in the loan application is usually relied upon by a loan officer in making a decision to grant loans is not sufficient to prove that a particular loan application was relied upon when credit was extended to an applicant. Nation was unable to testify that the loan application was actually considered and relied upon when credit was extended and the Court concluded that the plaintiff failed to prove the element of reliance.

In the instant case Ms. Broom's testimony concerning the additional credit extended to the Dawsons did not reflect any inquiry relative to the Dawsons' financial condition at the time of those .advances. Those advances were made over a period of time covering one year from the date of the loan approval.

Ms. Broom testified that when Nationwide told the Dawsons that their application had been approved they were requested to forward their Federal income tax returns which they had not sent with the initial application. Upon receipt of the income tax forms Nationwide sent the Dawsons a kit which included payment orders and a letter explaining the credit agreement. Ms. Broom testified that the loan was not made until the tax returns were submitted.

▆▆▆▆ The tax returns reflected that the Dawsons paid $980.00 in interest in 1977 on their individual return and $2,400.00 on the Schedule F, Farm Statement. Presuming that interest rates in 1977 on personal and farm loans were at least at a ten per cent annual rate, that statement would have indicated that the Dawsons had outstanding loans in 1977 in the amount of at least $33,000.00. Ms. Broom stated there was no indication in the file whether the loan officer making the loan gave consideration to the disclosure of interest paid as shown on the tax returns. This Court is unable to determine whether Martin was aware of this apparent discrepancy. If he was aware of it, then he had reason to believe the financial statement was erroneous. A creditor may not assert it reasonably relied on a statement which it knows was false. *Swint v. Robbins Federal Credit Union*, 415 F.2d 179, 185 (5th Cir. 1969). Furthermore, if Martin failed to notice the discrepancy, it may indicate that his reliance on the financial statement may not have been reasonable.

Ms. Broom did testify, however, that the records reflected calls to Citizens Bank and Lunenburg County Bank, both of which were creditors listed on the application. She said the balances the Dawsons maintained in those banks were similar to those furnished on the application. Its record also reflected that Nationwide called a credit bureau which furnished information showing that the Dawsons had five creditors with a total debt similar to the total listed on the application. In addition, Nationwide called Lenders, a private "loan by mail" organization. Lenders revealed that the Dawsons applied with Dial Financial for a loan but that no loan was extended to them. Ms. Broom did not say whether William Martin acted upon this information provided by Lenders.

This Court is concerned whether Nationwide, through its appropriate loan officer, ·made any investigation into the interest payments reflected on the tax returns, and any investigation into the reason Dial Financial declined to extend a loan to the Dawsons. Even without the testimony of the appropriate loan officer it is apparent

 

that, because of the interest payments and loan refusal, the creditor possessed information that conflicted with the apparent financial well-being portrayed by the Debtors' financial statement. *See, Kentile Floors, Inc. v. Winham*, 440 F.2d 1128 (9th Cir. 1971); *In re Disbrow*, 20 C.B.C. 1149 (D.Vt.1979). There is no evidence that the creditor acted upon this information.

In *In re Smith*, 2 B.R. 276 (Bkrtcy.E.D. Va.1980) the court questioned whether the apparent wealth reflected in the debtor's loan application was a "red flag" which should have warned the creditor that there was a reason why the Debtor was seeking a high interest mail loan instead of a lower interest bank loan. *Smith* at 279. This same question applies in the instant case. This together with the more than $3,300.00 in interest payments on debts reflected in the Dawsons' tax returns and the information acquired from Lenders that the Debtors were denied a loan by another mail loan company creates doubt whether Nationwide's reliance was reasonable.

Nationwide relies on *In re Garman*, 625 F.2d 755 (7th Cir. 1980), *cert. denied sub nom. Garman v. Northern Trust Company*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981) in its contention that it is not for the court to second guess a creditor's decision to make a loan. *Garman* arose under 11 U.S.C. § 17(a)(2) which unlike the present § 523(a)(2)(B) of the Bankruptcy Code did not require a showing of reasonable reliance. In *Garman* the debtor was a sophisticated businessman who had a long-standing and apparently successful business relationship with the lender for many years prior to his default. The financial statements he signed did not indicate on their face the presence of any material misrepresentation or admission and Northern Trust Company had no information indicating that anything stated in the financial statement might be materially false. In addition, testimony was introduced by those officers who approved the loans regarding their reliance on the financial statements of the debtor. In the instant case the testimony of the approving loan officer was not offered.

This Court finds that Nationwide has not established by clear and convincing evidence that it reasonably relied on the Dawsons' application when it extended credit to them.

An appropriate order will issue.