In re Charles M. DREWETT, Debtor.

AMERICAN BANK AND TRUST CO.
OF PA., Plaintiff,

v.

Charles M. DREWETT, Defendant.

Bankruptcy No. 80–02298T(7).
Adv. No. 80–0831.

United States Bankruptcy Court,
E. D. Pennsylvania.

Sept. 2, 1981.

Ellis Brodstein, Eugene Wisniewski, Reading, Pa., for debtor.

Frederick L. Reigle, Reading, Pa., trustee.

Raymond K. Hess, Reading, Pa., for American Bank.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

This case is before us on a creditor's complaint to determine dischargeability of a debt. At issue is whether the creditor has met its burden of proof regarding the elements of "reasonable reliance" and "intent to deceive." For reasons hereinafter given, we conclude that the creditor has not met its burden of producing clear and convincing evidence of an intent to deceive, and we therefore dismiss the complaint.[1]

Early in 1979, a closely held corporation know as Micro Computer Applications, Inc. [hereinafter, MCA], sought financing for its corporate endeavors from the plaintiff, American Bank and Trust Co. of Pa. [hereinafter, the Bank]. At that time, the debtor was president and a 50% shareholder of MCA; Conrad S. Wagner was vice-president and secretary, and also a 50% shareholder, of MCA.

After due consideration of MCA's loan application, the Bank granted two loans to MCA. The first was an outright loan of $35,000; the second was a future line of credit in the amount of $15,000. To insure repayment of the loans, the Bank demanded and received the following security for each loan: 1) a promissory note from MCA, personally guaranteed by both the debtor and Wagner; 2) a cognovit note signed by the debtor; 3) a cognovit note signed by Wagner; 4) a security interest in all of MCA's accounts, contract rights and/or chattel paper; 5) a chattel mortgage security interest in all of MCA's machinery, equipment, general intangibles, and inventory, and the proceeds thereof.

The cognovit notes allowed the Bank to confess judgment against the makers of the notes. The docketing of those judgments created liens against all of the real property of the debtor (and Wagner) located within the county where the judgment was filed. 42 Pa.Cons.Stat.Ann. § 4303 (Purdon 1979). The security interests were perfected pursuant to state law by the filing of financing statements with the Prothonotary of Berks County and the Secretary of the Commonwealth. 13 Pa.Cons.Stat.Ann. § 9302 (Purdon 1979).

Debtor filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1979), on September 16, 1980. On December 31, 1980, the Bank filed the instant complaint to determine dischargeability of the debtor's personal debts to it. Debtor answered, and denied all material allegations. Trial was held on March 17, 1981, and the case taken

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

under advisement pending receipt of transcript and briefs of both counsel.

The gravamen of the Bank's complaint is that prior to the loans to MCA, the Bank requested and received debtor's written statement of financial affairs.[2] In this document, dated March 23, 1979, the debtor listed his personal assets and liabilities. Pertinent to this case is the statement in the document that the debtor's "furniture and fixtures" were valued, at the time of the statement, at $12,000. It is this statement that Bank contends renders the debt nondischargeable. That statement, the Bank alleges, was false; it was made with the intent to deceive the Bank, and the Bank relied upon that statement in deciding whether to grant the loans to MCA. The Bank's complaint requests a determination that the debt to them is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) (1979).[3]

Debtor contends, however, that the statement was not false at the time of the making, that the debtor did not intend to deceive the Bank, and that in any event the Bank did not, and could not, reasonably rely upon that statement in granting the loans to MCA.

 The parties agree that this case is to be controlled by the application of Section 523(a)(2)(B). That section lists four elements that must be established in order for a debt of this type to be deemed nondischargeable: use of a statement in writing (1) that is materially false; (2) respecting debtors financial condition; (3) on which the creditor reasonably relied; (4) that the debtor caused to be made or published with the intent to deceive. 11 U.S.C. § 523(a)(2)(B) (1979). In order to have a debt determined nondischargeable, the plaintiff creditor carries the burden of producing "clear and convincing" evidence of all the requisite elements. *In re Barlick*, 1 BCD 412 (D.R.I.1974).[4]

After considering all the evidence presented at trial, we believe that the Bank has met its burden of showing that the debtor used a statement in writing, respecting debtor's financial condition, that contained a materially false statement.[5] This finding is not enough, however, to deem this debt nondischargeable. Congress has determined that the heavy onus of nondischarge of a debt should only be borne when all the elements, including the intent to deceive, have been proven. In this case, we must examine further the proof of the elements of "reasonable reliance" and "intent to deceive."

At the trial in this case, the debtor sought to elicit an admission from the Bank's vice-president in charge of this loan that he

**2.** The Bank also received financial statements from Wagner and MCA.

**3.** Section 523(a)(2)(B) of the Bankruptcy Code provides:
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
(iv) that the debtor cause to be made or published with intent to deceive;

**4.** Section 523(a)(2)(B) of the Bankruptcy Code is essentially identical to Section 17(a)(2) of the now repealed Bankruptcy Act of 1898. Cases construing Section 17(a)(2) are applicable to Section 523(a)(2)(B). *In re Whiting*, 10 B.R. 687, 4 C.B.C.2d 543 (Bkrtcy.E.D.Pa.1981)

**5.** We believe the phrase "materially false" in Section 523(a)(2)(B)(i) means no more than "actually false" or simply "false" or "untrue." To construe the phrase to include a degree of intent is redundant in light of the "intent to deceive" element of Section 523(a)(2)(B)(iv). *See, In re Tomeo*, 1 B.R. 673 (Bkrtcy.E.D.Pa. 1979).

In this case, the statement valuing the debtors fixtures and furniture at $12,000 was false; we believe the debtor included in that figure the value of a micro computer which he, in fact, no longer owned.

placed little importance upon debtor's financial statement, and in particular, the value of the furniture and fixtures, in deciding whether to grant this loan. Despite repeated questioning, the Bank's vice-president consistently maintained that he in fact relied upon all of the financial statements, as well as the intended security, in evaluating the loan applications. [Notes of Testimony at 55, 56, 65, 72; hereinafter cited as N.T.]

■ We do not feel that the Bank must prove that it relied solely on the debtors statement, only that their reliance was a "contributory cause of the extension of credit." *In re Shipley*, 1 B.R. 85, 90 (Bkrtcy.D.Md.1979). Indeed, it has long been held that partial reliance upon a written statement is reasonable. *See, In re Barrett*, 2 B.R. 296 (Bkrtcy.E.D.Pa.1979), and the cases cited therein. The requirement is that the creditor must show a *meaningful*, reasonable reliance upon the information provided. *In re Sutmire*, 2 B.R. 105 (Bkrtcy.M.D.Fla.1979); *In re Yeiser*, 2 B.R. 98 (Bkrtcy.M.D.Tenn.1979).

We believe that the Bank reasonably relied upon the debtor's valuation of his furniture and fixtures in deciding whether or not to grant these loans. Although other substantial security was given to insure repayment of the loans, the Bank also received the personal guaranty of the debtor that the notes would be repaid. The debtor pledged that in case the corporation could not repay the loan, his assets would be available to satisfy the debt. The debtor's net worth, as increased by the inflated value of the furniture and fixtures, was a proper measure for the Bank to use in determining the value of that security. As the Bank's vice-president repeatedly and convincingly stated, he considered *all* the intended forms of security in deciding whether to grant this loan. We conclude that the Bank reasonably relied upon the false valuation of the debtor's fixtures and furniture.

■ We must also, however, decide whether the false statement was made with the intent to deceive the Bank. The purpose of this element is to assure that only the debtor who dishonestly obtained money or an extension of credit be punished with the nondischarge of that debt. The requirement that the creditor prove an intent to deceive is necessary to protect the honest, though mistaken, debtor from suffering nondischarge of a debt.

■ Because a debtor will rarely, if ever, admit that deception was his purpose, the intent to deceive is an extremely difficult element to prove. To assist the creditor, while maintaining the notions of fair play and justice, we have allowed the intent to deceive to be presumed upon the proof of a prima facie case. *In re Tomeo*, 1 B.R. 673 (Bkrtcy.E.D.Pa.1979); *In re Barrett*, 2 B.R. 296 (Bkrtcy.E.D.Pa.1979). Once a creditor has presented its prima facie case, the burden of production of evidence (but not the ultimate burden of persuasion) shifts to the debtor. If the debtor fails to present any evidence that there was not an intent to deceive, the intent is presumed. *Tomeo, supra; Barrett, supra.*

■ The Bank argues that the debtor's many inconsistent and misleading statements at the trial of this case, in addition to his failure to include some valuable assets within his schedules accompanying his petition, are evidence of his bad faith and an intent to deceive. On the other hand, the debtor asserts that he is beset by severe economic and marital problems, and that those problems have rendered him confused, forgetful and inarticulate, but that those failings do not render this debt nondischargeable. While the debtor's plea of human failings do not fall upon deaf ears, they cannot be conveniently asserted as the sole explanation of everyone of the many misstatements made by the debtor at trial of this case. However, we believe that it is the debtor's intent at the time of the making the false statement that is controlling.

■ We are not convinced that the Bank has adequately met its burden of persuasion

in this case. While debtor's testimony at trial was certainly scattered and sometimes evasive, he did state (rather convincingly, we think) that despite his many problems and his distaste for his current predicament, he never intended to deceive the Bank. [N.T. at 26]. In fact, it appeared that the Bank's vice-president and the debtor developed some sort of casual friendship prior to and during the loan negotiations. The Bank's vice-president admitted that while he was aware of the possibility of deception, he doubted whether the debtor would have attempted it. [N.T. at 67].

The Bank has not shown that the debtor's valuation of his furniture and fixtures, though false and reasonably relied upon by the Bank, was made with the intent to deceive the Bank at the time it was made. We conclude that in fact the statement was not made with the intent to deceive, and for that reason, the debt to the Bank is dischargeable. The Bank's complaint is dismissed.