In re James A. GALLIGHER, JR., individually and d/b/a C.A.T.R. Systems, Inc., and Linda Ann Galligher, his wife, Debtors.

GIRARD BANK, Plaintiff,

v.

James A. GALLIGHER, JR., individually and d/b/a C.A.T.R. Systems, Inc., and Linda Ann Galligher, his wife, Defendants.

Bankruptcy No. 82-03709K.
Adv. No. 83-0599K.

United States Bankruptcy Court, E.D. Pennsylvania.

June 20, 1984.

David Hamilton Lang, Media, Pa. for defendants/debtors.

Stephen Raslavich, Blue Bell, Pa., trustee.

Alan Rosen, Philadelphia, Pa., for plaintiff.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The issue presented in this case is whether the debt owed by the debtors to Girard Bank is nondischargeable under § 523(a)(2)(B) of the Bankruptcy Code. ("Code").

Upon examination of the evidence produced at trial, we conclude that the debt in question is dischargeable. Although certain documents supplied to the Bank by the debtors during the loan application process contained information which was inaccurate, the Bank was unable to sustain its burden of establishing reasonable reliance by the Bank on this information or that the misstatements were made with the intent to deceive.

The facts of the case are as follows:[1]

The initial contact between the debtor, James Galligher, and Girard Bank ("Girard") was in the spring of 1981.[2] Mr. Galligher was seeking a start-up loan for his business. Approximately five (5) months

earlier, he had formed a financial reporting service business under the corporate name of "C.A.T.R. Systems, Inc." After several discussions with officers at Girard, Girard approved a loan to the debtors in the principal amount of $15,000.00. Mr. Galligher and his wife, Linda, executed a promissory note and unconditional surety agreement to Girard on June 12, 1981. Subsequently, they defaulted under the terms of the note and surety agreement and filed a petition under Chapter 7 of the Bankruptcy Code on August 5, 1982. Girard filed the instant adversary complaint alleging that the debtors had made material misrepresentations concerning their net worth and outstanding debts in three (3) separate documents submitted to Girard during the loan application process.

The alleged misstatements were: (1) a statement on a loan application that C.A.T.R. Systems, Inc. had no outstanding debts; (2) a failure to list $61,298.81 in outstanding debts on the personal statement of Mr. Galligher; (3) a financial statement wherein Mr. Galligher represented his net worth to be in excess of $100,000.00 when $98,624.00 of that amount consisted of customer good will attributable to C.A.T.R. Systems, Inc.

In order to prevail under § 523(a)(2)(B),[3] the plaintiff-creditor must show that the debt sought to be discharged was incurred to obtain money (1) by the use of a materially false statement in writing; (2) about the debtors' financial condition; (3) on which the creditor reasonably relied; and (4) which the debtors made with an intent to deceive.

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

2. N.T. p. 47.

3. Section 523(a)(2)(B) provides:
   (A) A discharge under § 727, 1141, or 1328(b) of this title does not discharge an individual Debtor from any debt—
   (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit by—
   (B) use of a statement in writing—
   (i) that is materially false;
   (ii) respecting the debtor's or an insider's financial condition;
   (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
   (iv) that the debtor caused to be made or published with intent to deceive.

■ The burden of proving the four (4) elements required by § 523(a)(2)(B) is on the party seeking to have a debt declared nondischargeable thereunder. *In re Klien,* 20 B.R. (Bankr. E.D.Pa.1982).

In the case at bench, there are three (3) documents which Girard alleges contain material misrepresentations made by the debtors. We will examine each of them individually to determine whether the four (4) elements of § 523(a)(2)(B) have been met by Girard.

■ The first document is a credit application for C.A.T.R. Systems, Inc. which was purportedly prepared and signed by Mr. Galligher.[4] Girard alleges that on this application, the debtors falsely stated that C.A.T.R. Systems, Inc. had no outstanding debts. The debtors produced unrebutted testimony at trial that this document was neither prepared nor signed by Mr. Galligher.[5] Therefore, we find that the plaintiff, Girard Bank, has failed to sustain its burden of proving that this document contained a material misstatement made by the debtors regarding their financial position.

■ The second document alleged by Girard to contain materially false information is titled "James A. Galligher, Jr., Personal Financial Staement of April 30, 1981.[6] On page 22 of this document, Mr. Galligher stated that his net worth was $108,800.00. Of that amount, $100,000.00 was listed as the value of his interest in C.A.T.R. Systems, Inc.

Girard claims that the $100,000.00 value assigned by Mr. Galligher to his interest in C.A.T.R. Systems, Inc. was intentionally false and misleading because only $1,356.00 of the $100,000.00 figure represented tangible assets. The remaining $98,624.00 was attributable to customer "good will" constituted the bulk of his statement of net worth on April 30, 1981. His testimony focused instead on showing that he did not intend to deceive Girard as to his net worth and that Girard did not rely on this information when deciding to make the loan.

In view of the evidence presented, we find that the figure of $98,624.00 attributed to "good will" in C.A.T.R. Systems, Inc. was unrealistic and misleading. It was impossible for a newly formed corporation such as C.A.T.R. Systems, Inc. to have accumulated customer "good will" to the extent of almost $100,000.00. Therefore, we also find that Girard has established the first two (2) elements of § 523(a)(2)(B) ... use of a materially false statement in writing respecting the debtors' financial condition. The two (2) remaining issues are (1) whether Mr. Galligher's statement of net worth was intentionally made to deceive Girard and (2) whether Girard reasonably relied on this information.

The burden of proving reasonable reliance on Mr. Galligher's misrepresentation of net worth, the third element of § 523(a)(2)(B), is on the plaintiff, Girard. Girard attempted to show reasonable reliance by offering testimony as to the "usual procedure" followed by the Bank in deciding whether to make a start-up business loan. Charles O'Donnell, the commercial loan officer at Girard in charge of the debtors' loan, testified at trial that the "usual procedure" was to assess:[7]

   (a) the purpose of the loan;

   (b) the dollar amount of the loan;

   (c) how the loan is to be repaid;

   (d) prior debts and liabilities of the business and principals;

   (e) income of principals apart from potential;

   (f) information contained in credit applications and financial statements.

Counsel for the debtors appropriately points out that Mr. O'Donnell did not testify that he applied these considerations to the Galligher loan, although he clearly had the opportunity to do so at the trial. He

---

**4.** *See* Exhibit "D".

**5.** N.T. pp. 52, 61–70.

**6.** This financial statement is included in the documentation labeled as Exhibit "F".

**7.** N.T. pp. 11–13.

also could have testified as to which factors, in particular, weighed heavily in the Bank's decision to act favorably on Mr. Galligher's loan application. We believe that the absence of testimony by Mr. O'Donnell in this regard is explained by the fact that Mr. Galligher did not go through the "usual" customary loan application procedure at Girard. Counsel for Girard sought to downplay the events leading up to the decision to grant the debtors' loan application. However, it is clear from the testimony of Mr. Galligher that the Bank was interested in the business potential of C.A.T.R. Systems, Inc. and that this factor, in and of itself, guided the Bank's decision to make the loan.

The events which led to Girard's decision to grant the Gallighers a business loan were described by Mr. Galligher as follows:

Mr. Galligher was introduced to Girard Bank by Henry Went, a member of the Board of Directors of Girard Bank.[8] Mr. Went contacted Harold Jones at the Bank on behalf of Mr. Galligher. A meeting was arranged between Mr. Jones, Mr. Galligher and Charles O'Donnell, a commercial loan officer at Girard. At this meeting, Mr. Galligher presented a plan for marketing his newly developed financial reporting service to executives.[9] Mr. Jones appeared interested in the potential which Mr. Galligher's business had to offer Girard and referred Mr. Galligher to Mr. William Glascock, the head of the marketing department at Girard.[10] A joint venture between C.A.T.R. Systems, Inc. and Girard was discussed. As a result of the meeting with Mr. Glascock, Mr. Galligher was asked to prepare a summary of Girard's products and determine a strategy for approaching executives of major companies with the intent to sell them the products of C.A.T.R. Systems, Inc. and Girard.[11] Subsequent to the meetings with the above officials, Mr. Galligher contacted Mr. O'Donnell at the Bank to find out that his loan had been approved.[12] Prior to the telephone conversation with Mr. O'Donnell, the only documentation submitted to Girard by Mr. Galligher were the financial statements and balance sheets labeled as plaintiff's Exhibit "F".[13]

Girard contends that regardless of the interest expressed by bank officials in the debtors' concept and in C.A.T.R. Systems, Inc., the Bank relied on information supplied by the debtors such as net worth, prior liabilities, etc. in deciding to make the loan. Counsel cites *In re Barrett,* 2 B.R. 296 (Bankr. E.D.Pa.1980) for the proposition that even partial reliance on a misstatement of net worth is sufficient to except a debt from discharge.

In *Barrett, the Court stated:*

The testimony of James Foley, branch manager for plaintiff, makes it clear that the *information supplied by the applicants about their total indebtedness was a crucial factor in the evaluation of their credit-worthiness and ability to repay...* The use of a debt ratio is accepted practice for lending institutions; thus credibility is accorded Mr. Foley's testimony concerning plaintiff Beneficial's development of a debt ratio and its role in the procedure employed in deciding whether to grant a loan. Foley testified that if the ratio of fixed monthly expenses to net income exceeds fifty percent, it is strict company policy not to make the loan. (Emphasis added).

Defendants argue that plaintiff did not rely solely on the written financial statement executed by them, but also relied on other information. We agree with the defendants' factual observation, but not with their legal conclusion that this vitiates plaintiff's reliance on the financial statement. Partial reliance on the financial statement is sufficient to render the

---

**8.** N.T. pp. 48, 13–14.

**9.** N.T. p. 15.

**10.** N.T. p. 50.

**11.** *Id.*

**12.** N.T. p. 51.

**13.** N.T. p. 52.

debt thereby incurred nondischargeable in bankruptcy.

2 B.R. at 300–302.

We find the facts in *Barrett, supra,* distinguishable from the facts in this case. The holding in *Barrett* appears to rely on the testimony of the bank official that the information supplied by the debtors was a crucial factor in the decision to make the loan, despite the presence of other factors. As previously stated, we do not have testimony to the same effect in the case at bench.

Moreover, the plaintiff-creditor must prove not only that there was reliance, but that the reliance was *reasonable.* In the case of *In re Klein,* 20 B.R. 119 (Bankr. E.D.Pa.1982), the Court stated:

"...even if the bank relied in part on application in question, we conclude that the reliance was not reasonable where the bank had available in its own files information...which would lead a reasonable lender to investigate further into the Debtor's financial condition...we conclude that it was unreasonable for the bank not to have done so."

20 B.R. at 122.

Even if Girard partially relied on the debtors' statement of net worth, debtors contend that such reliance was unreasonable because Girard had available to it information which would have led a reasonable lender to investigate further. The statement concerning the $108,800.00 figure of net worth and attributing $100,000.00 of that amount to C.A.T.R. Systems, Inc. was on page 22 of the personal financial staement of James Galligher. This document was labeled as Exhibit "F", Girard had available to it the balance sheet of C.A.T.R. Systems, Inc., dated April 30, 1981, which listed total liabilities and stock holder equities in C.A.T.R. Systems, Inc. at $12,150.00 on that date.[14] Therefore, Girard was aware or should have been aware prior to approving the loan that the book value of C.A.T.R. Systems, Inc. was only $12,150.00. Upon reasonable investigation, Girard could have determined that the statement of net worth was unrealistic.

Finally, Mr. Galligher claims that he did not intend to deceive Girard as to his net worth. On the issue of intent to deceive, he presented testimony to show how he arrived at the $100,000.00 value assigned to C.A.T.R. Systems, Inc. Before preparing his personal financial statement, Mr. Galligher sought advice from his personal accountant, Mr. Emery Todd. It was on the basis of the advice he received from Mr. Todd that Mr. Galligher calculated his net worth. Mr. Todd was present at the trial and testified as to the advice he gave Mr. Galligher:[15]

"My advice to Mr. Galligher when he asked me how to go about putting a value on his business was: Since his business was also a service-oriented business where he is providing services for people, I told him to value his equipment, any cash that he had, and to also put a value on his customer base.

He was providing a service to his clients on an on-going month-to-month year-to-year basis, and I asked him to come up with his best estimate of what he felt his customer base would be worth, and what he would be willing to sell it for—what someone would be willing to pay him for that.

He came up with this $100,000.00 as being the total of his equipment, cash in the business, and his customer good will. This is not a projected number; this $100,000.00 represents what he felt his business was worth on April 30th when he prepared this financial statement."

In summary, we find the Girard Bank did not reasonably rely on the misstatement of net worth contained in the personal financial statement of James Galligher and submitted to Girard prior to the Bank's approval of the loan. We also find that the misstatement was not made by the debtor, James Galligher, with intent to deceive. Therefore, Girard has failed to sustain its

**14.** N.T. p. 18.

**15.** N.T. p. 74.

burden with respect to the last two (2) elements of § 523(a)(2)(B), reasonable reliance and intent to deceive. Judgment will be entered in favor of the debtors with respect to the alleged misrepresentations in the document labeled as Exhibit "F".

■ A personal credit statement by James A. Galligher, Jr., is the third and final document which is alleged by Girard to contain false information submitted by the debtors during the loan application process. This document was attached to the complaint and labeled as Exhibit "E". Girard claims that Mr. Galligher listed only his credit card obligations on this statement and did not list any of the other obligations which were then due and owing by him.

Girard sought to prove at trial through cross-examination of Mr. Galligher that $61,298.61 in prior undisclosed debts were in existence at the time Mr. Galligher applied for the loan and that he intentionally failed to disclose these debts. Mr. Galligher admitted that one debt in particular, a business loan from Household Finance Company, was in existence for one year prior to the time he applied for the loan with Girard.[16] He further testified that he did not disclose the Household Finance debt because it was a business loan, the proceeds of which went to his corporation. Therefore, he did not believe it should be listed on his personal credit statement.[17]

With respect to the remaining undisclosed liabilities of the debtors, Girard was not successful at proving that they were in existence on the date the debtors' loan application was made. Mr Galligher's testimony on cross-examination indicated only that these debts were owed as of the date the bankruptcy petition was filed.[18] Furthermore, even if we found that the debtors materially misrepresented their existing liabilities to Girard, Girard never established reasonable reliance on this information. There was no testimony from Mr. O'Donnell, the commercial loan officer, that prior indebtedness was one of the factors he applied when considering the Gallighers' loan application.

We conclude that the evidence presented by Girard is insufficient to establish reasonable reliance by Girard on Mr. Galligher's statement of prior liabilities or that Mr. Galligher intended to deceive Girard by failing to reveal all of the debts owed by him. *See, e.g., In re Klein, supra; In re Magnusson*, 14 B.R. 662 (Bankr.N.D.N.Y. 1981); *In re Drewett*, 13 B.R. 877 (Bankr. E.D.Pa.1981). The evidence concerning Mr. Galligher's meetings with bank officials strongly suggests that these officials did not give the same consideration to Mr. Galligher's loan application as they would have to a routine loan application where Girard had no self-interest in the applicant's business. The factors normally applied to a routine loan request were of minor significance in Mr. Galligher's case. We believe the bank officials were attracted to the concept presented by Mr. Galligher and they relied on this concept in deciding to make the loan to his business. Girard failed to present evidence to convince us otherwise.

For all of the above reasons, we hold that the debt owed to Girard Bank by the debtors (totaling $17,755.80 plus interest from January 10, 1983) does not fall within the parameters of § 523(a)(2)(B) of the Bankruptcy Code, and is, thus, dischargeable.

---

16. N.T. p. 32.

17. N.T. p. 42.

18. N.T. pp. 30–35.