**In re Donald Reed JANES, Patricia Louise Janes, Debtors.**

**William E. SPARKMAN, Loyce Katz Sparkman, Plaintiffs,**

v.

**Donald Reed JANES, Defendant.**

**Bankruptcy No. 83–20689.**
**Adv. No. 83–0245.**

United States Bankruptcy Court, D. Kansas.

Aug. 14, 1985.

18. 11 U.S.C. § 343.

J. Kent Emison, Kansas City, Mo., for debtors.

Carl R. Clark, Mission, Kan., for debtors.

William O. Isenhour, Jr., Mission, Kan., for plaintiffs.

Chris W. Henry, Kansas City, Kan., trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came on for trial on June 26, 1984, on the plaintiffs' complaint to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a)(2)(B). Debtors Donald Reed Janes and Patricia Louise Janes appeared through their attorney J. Kent Emison, and debtor/defendant Donald Reed Janes also appeared in person; plaintiffs William E. Sparkman and Loyce Katz Sparkman appeared in person and through their attorney William O. Isenhour, Jr. The Court sustained defendants' oral motion to dismiss as to Patricia Louis Janes. After hearing testimony and the statements of counsel, the Court took the matter under advisement as to Donald Reed Janes. Counsel have submitted proposed findings of fact and conclusions of law; and the matter is ready for determination.

### FINDINGS OF FACT

Based on the testimony, exhibits, proposed findings of fact and conclusions of law, and the file herein, the Court finds as follows:

1. That this Court has jurisdiction over the parties and the subject matter; and that venue is proper.

2. That debtor Donald Reed Janes is a physician specializing in obstetrics and gynecology.

3. That plaintiff William E. Sparkman is an associate professor of educational administration. Mrs. Sparkman is a mathematics teacher.

4. That the plaintiffs purchased their home at 2201 Lawrence in Manhattan, Kansas, for $38,500.00 in 1975. When Mr. Sparkman accepted a teaching job in Lubbock, Texas, he and his wife put their Manhattan home on the market. In July 1981, plaintiffs purchased a home in Lubbock through a loan from Mrs. Sparkman's stepfather. They moved to Lubbock and left their Manhattan residence with a realtor, having arranged to rent the Manhattan

home for $525.00 monthly. This sum covered plaintiffs' mortgage payment and allowed them to make $70.00 per month after paying the management company.

5. That on July 20, 1982, the debtor Donald Reed Janes travelled to Manhattan, Kansas, to look for real estate for investment purposes. Dr. Janes contacted Shirley Green, a real estate agent with Roberts Realty, and spent much of the day viewing real property, including plaintiffs' residence at 2201 Lawrence. The debtor returned to Ms. Green's office where he completed a financial statement (Pl.Ex. # 1) at her request.

6. That in late July or early August 1982, Dr. Janes offered plaintiffs $65,-000.00 for the Manhattan residence. Dr. Janes borrowed part of the money for the purchase from Union State Bank, and Mr. and Mrs. Sparkman agreed to finance the balance. Before agreeing to the financing arrangement, however, plaintiffs obtained the debtor's financial statement and learned from the real estate agent that the agent had checked with Union State Bank and learned the bank considered Dr. Janes a good credit risk. Mr. and Mrs. Sparkman both testified that they relied upon debtor's financial statement in deciding to extend credit to him. The debtor gave plaintiffs a $26,100.00 promissory note secured by New York telephone bonds with $26,000.00 face value. Plaintiffs were aware the bonds were not sufficient to satisfy the debt in case of default. Accordingly, they looked to Dr. Janes' ability to personally repay the debt.

7. That the debtor first defaulted in payment on the note in November 1982. He defaulted again in March 1983, and the default was never cured. The bonds securing the note were delivered to plaintiffs who sold them in a commercially reasonable manner resulting in a deficiency balance of $15,069.65.

8. That Dr. Janes omitted the following debts from the financial statement he provided the plaintiffs' real estate company:

a. $3,300.00 due Shawnee State Bank last renewed in May 1982;

b. $25,000.00 on note dated May 3, 1982, due United Kansas Bank;

c. $5,000.00 note dated March 12, 1982, due Mr. and Mrs. Ivan Smith;

d. $45,500.00 note dated July 1, 1982, due John Wherry;

e. $48,750.00 note dated June 30, 1982, due Avery Freeman;

f. $34,500.00 note due Hobson & Sons Furniture Co.;

g. $10,000.00 note due United Missouri Bank;

h. $12,000.00 note due Lenexa State Bank.

Total of omitted debts: $184,050.00. Debtor claims these debts were inadvertently omitted.

9. That the financial statement lists rental and lease income of $14,400.00, although tax returns for 1981 and 1982 reflect losses for rentals in the amounts of $20,383.00 and $65,372.00 (Pl.Exs. # 2 & # 3).

10. That the financial statement failed to disclose that bank deposits of approximately $22,000.00 at United Missouri Bank and Lenexa State Bank were not owned by the debtor, but were held in his name as trustee for his minor children.

11. That the financial statement failed to disclose the following assets were pledged or encumbered:

a. $52,000.00 Dow bonds;

b. $100,000.00 New York telephone bonds;

c. $33,817.00 furniture from Hobson & Sons Furniture Company;

d. $10,000.00 cash (CD) at United Missouri Bank;

e. $12,000.00 cash (CD) at Lenexa State Bank.

12. That the financial statement listed cash on hand and in banks at $25,000.00. Of that sum, $22,000.00 was the amount deposited in trust for the debtor's minor children. Other banks showed the following balances:

a. $66.43 balance at 7/13/82 at United Kansas Bank (Pl.Ex. # 6, p. 2).

b. $295.68 balance at 7/20/82 at Kansas State Bank (Pl.Ex. # 8, p. 2).

c. $100.00 balance at 7/19/82 at Union National Bank.

Thus, while debtor's financial statement indicated he had $25,000.00 in cash or in banks, the amount actually held in his name in his three checking accounts was $462.11. Dr. Janes explains this discrepancy with the fact that his account balances fluctuated widely during the period in question.

13. That the financial statement listed the cash value of Dr. Janes' life insurance policy at $20,000.00. In fact, however, Dr. Janes' insurance records (Pl.Ex. # 5) indicated that the policy had no cash value in 1982, the year he had purchased it. Dr. Janes contends he believed the policy had cash value because of the statements of the life insurance agent who sold him the policy. The debtor claims that, after he completed the financial statement, he learned the policy had no cash value.

14. That the following debts listed in the financial statement are understated when compared to the bankruptcy schedules:

a. Bankruptcy schedules list a $48,-000.00 debt to United Kansas Bank on 714 West Elm; the financial statement lists a $43,125.00 debt (understatement of $4,875.00);

b. Bankruptcy schedules list a $55,-000.00 debt to Regional Investment on 1619 Kenwood; the financial statement lists the debt as $53,000.00 (understatement of $2,000.00);

c. Bankruptcy schedules list a $341,-150.00 debt to Shawnee State Bank on 8380 Maplewood; the financial statement lists the debt as $299,000.00 (understatement of $42,150.00).

## ISSUE OF LAW

WHETHER DR. JANES' DEBT TO MR. AND MRS. SPARKMAN IS NON-DISCHARGEABLE BECAUSE HE PROVIDED THEM WITH A FALSE FINANCIAL STATEMENT.

## CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 523(a)(2)(B), a debtor is not discharged from any debt:

"(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;"

To prevail under this section, plaintiff must prove the following elements by clear and convincing evidence: that the debtor used a statement in writing (1) that is materially false (2) respecting his financial condition (3) on which the creditor reasonably relied (4) that the debtor caused to be made or published with the intent to deceive. Debtor does not dispute that the financial statement in question was materially false. Thus, the two issues to be resolved are whether the debtor made the false statement with an intent to deceive and whether plaintiffs reasonably relied on the financial statement.

Dr. Janes contends plaintiffs did not reasonably rely on his financial statement in deciding whether to extend credit to him. However, an inference of reliance is created when a financial statement is made to support an application for credit, and credit is given thereafter. *Industrial Bank of Commerce v. Bissel*, 219 F.2d 624 (2d Cir. 1955); *In re Gem Sleepwear Co.*, 461 F.Supp. 644 (S.D.N.Y.1978); cited in *In re Whiting*, 10 B.R. 687, 4 C.B.C.2d 543, CCH ¶ 67,995 (E.D.Pa.1981).

Plaintiffs need not prove that they relied solely on the debtor's statement, only that their reliance was a "contributory cause of the extension of credit." *In re Drewett*, 13 B.R. 877, 880 (E.D.Pa. 1981). Mr. and Mrs. Sparkman testified that they reached their decision to extend credit to Dr. Janes by relying on his finan-

cial statement and on the recommendation of the real estate agent.

The Court finds that plaintiffs' partial reliance on the financial statement was reasonable under the circumstances and was sufficient to satisfy the third element of the § 523(a)(2)(B) test.

 Because direct proof of intent to deceive is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred. *In re Simpson*, 29 B.R. 202, 211 (N.D.Iowa 1983). The Court finds that the numerous misstatements and omissions in the debtor's financial statement created an inference that he intended to deceive Mr. and Mrs. Sparkman. Debtor attempted to rebut the inference through testimony that he forgot to include the debts; that he was misled as to the value of certain assets, and that he hurriedly filled out the statement without his banker's advice. The Court finds these explanations are inadequate to overcome the inference of intent to deceive. This debtor is a physician who regularly engaged in the purchase of real estate and routinely prepared financial statements in conjunction with these transactions. In failing to verify figures that he knew, or should have known, would be evaluated to determine his credit worthiness, Dr. Janes acted with a reckless disregard for the truth. Having had the opportunity to observe Dr. Janes' demeanor and to evaluate his credibility on the witness stand, the Court finds Dr. Janes completed the financial statement with an intent to deceive his creditors. *Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 901 (10th Cir.1977). Since all elements under § 523(a)(2)(B) are present, the Court finds the debtor's $15,069.65 debt to the plaintiffs is nondischargeable.

THE FOREGOING CONSTITUTES FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 7052 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.