TEACHERS CREDIT UNION, Appellant,

v.

Geneva JOHNSON, Appellee.

No. 90–0742–CV–W–9.

United States District Court,
W.D. Missouri, W.D.

July 8, 1991.

Alan D. Schwartz, Leon G. Kusnetzky, P.C., Kansas City, Mo., for appellant.

Frank E. Brown, Kansas City, Mo., for appellee.

## ORDER REMANDING CASE TO BANKRUPTCY COURT

BARTLETT, District Judge.

Appellant Teachers Credit Union (Credit Union) appeals from the bankruptcy court's June 13, 1990, Judgment and Memorandum Opinion and June 18, 1990, Order Denying Motion for New Trial wherein the court held that a debt owed to appellant by appellee Geneva Johnson is not a nondischargeable debt under 11 U.S.C. § 523(a)(2)(B).

### I. *Issues*

Appellant sets forth three issues in this bankruptcy appeal. It argues that the bankruptcy court erred in concluding that the testimony of the employee who authorized the extension of credit to appellee was necessary to establish appellant's reasonable reliance on the false financial statement provided by appellee. Appellant also argues that the court erred in finding that appellant failed to establish by clear and convincing evidence that it reasonably relied on the false financial statement. Finally, appellant argues that the bankruptcy court erred in finding that appellant failed to prove reasonable reliance after the court had denied appellee's motion for involuntary dismissal at the conclusion of appellant's case.

### II. *Standard for Bankruptcy Appeal*

This court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a) which provides:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under § 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Bankruptcy Rule 8013 provides that, on appeal, the district court

may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The Advisory Committee Notes state that Rule 8013 accords the same weight to the findings of a bankruptcy court as is given the findings of a district court under Rule 52, Federal Rules of Civil Procedure. Furthermore, a finding is clearly erroneous when the reviewing court is " 'left with the definite conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 365, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

The district court must independently determine questions of law or mixed questions of law or fact. *In re Multiponics, Inc.*, 622 F.2d 709, 913 (5th Cir.1980); *In re Hammons*, 614 F.2d 399, 403 (5th Cir.1980). A bankruptcy court's conclusions of law are freely reviewable on appeal. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961); *In re Pierce*, 809 F.2d 1356, 1359 (8th Cir.1987) (conclusions of law are subject to *de novo* review by the district court).

The alleged errors raised in this appeal involve both factual and legal issues. Whether appellant proved by clear and convincing evidence that it reasonably relied on appellee's false financial statement involves a factual issue. This court must defer to the bankruptcy court's findings on this issue unless they are clearly erroneous. *See In re Coughlin*, 27 B.R. 632, 636 (Bankr. 1st Cir.1983) ("Questions concerning.... reliance are questions of fact, and, thus, the bankruptcy court's findings on these issues are subject to appellate review under the clearly erroneous standard."). However, whether appellant must prove reasonable reliance through the testimony of the employee who officially approved appellee's loan involves a question of law.

## III. *Factual Background*

This appeal results from appellee's attempt to discharge in bankruptcy a $9,629.55 debt owed to appellant. Based on 11 U.S.C. § 523(a)(2)(B), appellant opposed the attempted discharge by filing a Complaint objecting to the dischargeability of the debt.

Appellant is a state chartered credit union organized under Chapter 370 of the Revised Missouri Statutes. Appellee is an individual debtor who filed a Petition in Bankruptcy under Chapter 7 of the Bankruptcy Code on December 19, 1989.

On September 15, 1980, Johnson, along with her brother and son, obtained a real estate loan from Blue Valley Savings & Loan (Blue Valley) in the amount of $60,800 for the purchase of a residence located at 3500 Birchwood Drive, Kansas City, Missouri. The loan was secured by a deed of trust on the real property. Gregory Belchner, Johnson's son, has made partial payments on this loan since the property was purchased in 1980. Since 1982, Belchner has made approximately 90 to 100 percent of the payments.

On January 22, 1986, Johnson became a member of the Teachers Credit Union. On March 31, 1986, she applied for a Visa credit card with Credit Union but the application was denied because appellee's "debt ratio" was too high. On July 15, 1987,

Johnson applied for a $500 vacation loan with Credit Union but the application was again denied because Johnson's "debt ratio" was too high. The application submitted by Johnson stated in the "Debts" section that Johnson had a mortgage on a house located at "105 at 3500 Bales, Kansas City, Missouri 64137."[1]

The Blue Valley loan was not specifically disclosed on any prior loan applications provided by appellee. Johnson has also reported an incorrect social security number on the documents provided to appellant in each of her attempts to obtain a loan from appellant.

On August 2, 1988, Johnson applied for a $20,000 new car loan from the Credit Union. The application was approved. On August 23, 1988, the Credit Union loaned Johnson $19,936.52 for the purchase of a new car. The loan was secured by a lien on a 1988 Chevrolet Van and evidenced by a "Loanliner Credit Agreement" and "Advance Request Voucher".

The financial statement (credit application) submitted by Johnson contained a social security number that was not Johnson's and that also failed to list the Blue Valley debt which at that time had a balance of approximately $57,000. The application stated that Johnson owned the property at 3500 Birchwood. Under the "Debts" section, "NA" was written.

At the time Johnson submitted her August 2, 1988, application, Wilma Bishop was employed by the Credit Union as a loan processor/scorer. Her duties included interviewing loan applicants and processing and scoring their applications. Her duties did not include approving loans. Bishop processed Johnson's August 2, 1988, application.

Margaret Gile was a vice-president of the Credit Union at the time Johnson applied for the loan in August 1988. She was also Bishop's immediate supervisor. Her duties included approving loan applications processed by Bishop. Gile did not testify at the trial before the bankruptcy court.

When Johnson submitted her August 2, 1988, application, Bishop interviewed her and accepted her financial statement. Bishop ran a credit check on Johnson using the incorrect social security number provided by Johnson on the financial statement. Bishop also "credit scored" Johnson's financial statement using a standard form provided by the Credit Union.[2] Johnson's debt payment to income ratio was 25 percent.

Bishop testified that she did not have final authority to approve or disapprove loans. A vice-president must approve the loan. The vice-president decides whether to approve a loan based on the information provided by Bishop. The information provided by Bishop is based on the scoring, the credit report and Bishop's interview with the applicant.

Bishop testified that after she interviewed Johnson and scored the financial statement, she turned the file over to Gile. Gile examined Johnson's financial statement and discussed it with Bishop. Gile asked Bishop about the fact that although Johnson said that she "owned" the house, she had not reported any housing expense. Bishop told Gile that she relied on the information given to her by Johnson on the financial statement. In addition, Bishop had questioned Johnson about why she had listed no housing expense and Johnson had said that she made no mortgage payment and had no mortgage debt.

No other employee reviewed or scored Johnson's application except Bishop and Gile. In evaluating Johnson's credit application, Bishop relied on no other documents or materials except the credit bureau report and Johnson's financial statement. However, Bishop testified that she did examine the prior loan applications "to see if

---

1. The residence is located at 3500 Birchwood Drive, Kansas City, Missouri, which is near the intersection of 105th and Bales in Kansas City, Missouri. On this loan application, Johnson listed her address as 3500 Birchwood Drive and stated that she "rents."

2. A credit score is computed by appellant using the financial statement submitted by the applicant and is based primarily on a debt payment to income ratio. In determining the ratio, appellant factors in payments on all debts for which the applicant is obligated.

the house payment had been included and how long [Johnson] had been in her house."

Bishop testified that the Credit Union was not aware of Johnson's $50,000 debt to Blue Valley at the time it extended credit to Johnson because this information was not disclosed on the financial statement. The Blue Valley loan also did not appear on the credit bureau report received by Bishop because that report was based on the incorrect social security number provided by Johnson.

Bishop also testified that the Credit Union did not discover Johnson's Blue Valley loan until it received notice that Johnson had filed a bankruptcy petition. She testified that if Johnson had disclosed the $57,000 Blue Valley debt, her debt payment to income ratio would have been too high to qualify for the loan and, therefore, the Credit Union would not have made the loan.

After Johnson filed her bankruptcy petition, the Credit Union moved to have the automatic stay lifted. The bankruptcy court lifted the stay and the Credit Union repossessed and sold the van which served as collateral on Johnson's loan. After the sale, Johnson still owed the Credit Union $9,629.55.

On March 30, 1990, the Credit Union filed a Complaint objecting to the dischargeability of Johnson's debt under 11 U.S.C. § 523(a)(2)(B). The Credit Union alleges in its Complaint that it had loaned Johnson approximately $20,000 and that it extended this credit after relying on a false financial statement submitted by Johnson. The financial statement was allegedly false because Johnson listed an incorrect social security number and failed to disclose her $57,000 debt to Blue Valley.

On June 4, 1990, the bankruptcy court tried the issues raised in the Credit Union's Complaint. At the conclusion of the Credit Union's case, Johnson moved for dismissal pursuant to Rule 41(b), Federal Rules of Civil Procedure. The court denied the motion.

On June 13, 1990, the bankruptcy court entered judgment against the Credit Union on Count I of its Complaint and issued a Memorandum Opinion containing findings of fact and conclusions of law. The court held that the Credit Union had "failed to provide clear and convincing evidence" that it had relied on the false financial statement.

On June 14, 1990, the Credit Union filed a Motion for New Trial which the bankruptcy court denied. On June 27, 1990, the Credit Union filed this appeal.

IV. *Bankruptcy Court's Decision*

On June 13, 1990, the bankruptcy court found:

> The court believes that debtor gave Teachers [Credit Union] a written statement that was materially false. The falsity was twofold. First, it did not list the mortgage debt on the residence and second, it gave creditor a false [social] security number. The statement respecting debtor's financial condition was made with the intent to deceive Teachers and it did deceive them. But, there is no showing that Teachers *reasonably* relied thereon.

> [Teachers Credit Union's] witness scored credit and processed applications for credit. She did not grant or deny loans. She did not [and could not] testify that the party granting the loan reasonably relied on the false social security number or the concealment of the mortgage indebtedness in making the loan. In fact, [Teachers Credit Union] had rejected prior loan applications that had the same incorrect social security number and lack of information. The court has no doubt that debtor deliberately delivered a financial statement that was false, contained a fictitious social security number, and was intended to deceive. However, all that still leaves one essential element of an 11 U.S.C. § 523(a)(2)(B) exception to discharge missing—the reasonable reliance on debtor's deliberate, fraudulent, and successful delivery of a false financial statement. [Teachers Credit Union] needed only one qualified witness to state that it relied on the false financial statement. Unfortunately, the testimony of Wilma Bishop was not sufficient be-

cause she only graded credit. She did not approve or disapprove loans and could not testify what the party approving it did or did not rely upon in proving same.

Each element of 11 U.S.C. § 523(a)(2)(B) must not only be shown, it must be proved by clear and convincing evidence. *In re Garner,* 881 F.2d 579 (8th Cir. 1989). [Teachers Credit Union] has failed to provide clear and convincing evidence of reliance and Count I of its Complaint is, therefore, ruled against it. *See* Joint Submission of Documents for Record on Appeal, Doc. 4, Memorandum Opinion at 2–3.

Thus, the bankruptcy court held that the debt owed to the Credit Union does not qualify as a nondischargeable debt under § 523(a)(2)(B) because the Credit Union did not present clear and convincing evidence of its reasonable reliance on the false information contained in Johnson's financial statement.

### V. *Discussion*

A. *The Bankruptcy Court Erred in Ruling that Testimony of the Employee Who Approved the Loan Was Required to Establish Reasonable Reliance*

■ Section 523(a)(2)(B) of the Bankruptcy Code provides that a debtor is not discharged from a debt for money or property obtained by 1) the debtor's use of a written statement; 2) that is materially false; 3) regarding the debtor's financial condition; 4) on which the creditor reasonably relied; and 5) that the debtor caused to be made or published with intent to deceive. *In re Kroh,* 87 B.R. 1004, 1007 (W.D.Mo.1988); *In re Janes,* 51 B.R. 932, 935 (D.Kan. 1985).[3] To prevail under section 523(a)(2)(B), the plaintiff must prove each

of these elements by clear and convincing evidence. *In re Garner,* 881 F.2d 579, 581 (8th Cir.1989); *In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *In re Bundy,* 95 B.R. 1004, 1008 (W.D.Mo.1989).

The Credit Union challenges only the bankruptcy court's findings regarding whether it reasonably relied on the false financial statement submitted by Johnson. It does not challenge the court's findings that Johnson's financial statement contained materially false financial information or that it was provided to the Credit Union with the intent to deceive.

■ There are two components to the reliance requirement of § 523(a)(2)(B)(iii): 1) actual reliance and 2) reasonable reliance. *In re Bundy,* 95 B.R. at 1009 ("[T]he creditor must not only have [actually] relied on a false statement in writing, but the reliance must have been reasonable.").

Because the bankruptcy court found insufficient evidence of actual reliance, it did not reach the question of whether the Credit Union's reliance was reasonable. Therefore, the Credit Union challenges only the bankruptcy court's findings regarding the actual reliance component.

■ The majority of courts have held that reliance on a false financial statement " 'need not be an absolute reliance or the sole factor' " considered in extending credit. *In re Nance,* 70 B.R. 318, 323 (N.D.Tex. 1987) (quoting *In re Mutschler,* 45 B.R. 482, 492 (Bankr.D.Md.1984)); *In re Harmer,* 61 B.R. 1, 6 (Bankr.D.Utah 1984); *In re Janes,* 51 B.R. at 935; *In re Coughlin,* 27 B.R. 632, 637 (Bankr. 1st Cir.1983); *In re Drewett,* 13 B.R. 877, 880 (Bankr.E.D.Pa. 1981). Partial reliance on a false financial statement is sufficient to render a debt nondischargeable so long as it is not used

---

**3.** Section 523(a)(2)(B) provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
(B) use of a statement in writing—
(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive.
11 U.S.C.A. § 523(a)(2)(B) (1979).

to fill a gap caused by unreasonable reliance. *In re Harmer*, 61 B.R. at 6; *In re Coughlin*, 27 B.R. at 637; *In re Misjak*, 26 B.R. 914, 918 (W.D.Wis.1983); *In re Drewett*, 13 B.R. at 880.

Reliance on a false financial statement need only be the " 'precipitant, the catalyst for the loan, without which the loan would not have been made,' " *In re Nance*, 70 B.R. at 323 (quoting *In re Mutschler*, 45 B.R. at 492), or a "contributory cause of the extension of credit." *In re Janes*, 51 B.R. at 935; *see also In re Kroh*, 87 B.R. at 1008; *In re Coughlin*, 27 B.R. at 637; *In re Drewett*, 13 B.R. at 880; *In re Shipley*, 1 B.R. 85, 90 (Bankr.D.Md.1979).

Furthermore, "an inference of reliance is created when a financial statement is made to support an application for credit, and credit is given thereafter." *In re Janes*, 51 B.R. at 935 (citing *Industrial Bank of Commerce v. Bissell*, 219 F.2d 624 (2nd Cir.1955) and *In re Gem Sleepwear Co.*, 461 F.Supp. 644 (S.D.N.Y.1978)); *see also In re Nance*, 70 B.R. at 323.

■ The bankruptcy court held that the testimony of Margaret Gile, the bank officer who authorized the loan to Johnson, was required to establish the Credit Union's actual reliance on the false financial statement. According to the court, Wilma Bishop's testimony was insufficient to establish reliance because she was not responsible for approving loans and, therefore, was not qualified to testify as to what Gile relied on in approving the loan.

Johnson argues that the bankruptcy court's ruling is correct because absent Gile's testimony, there is no way to determine whether Gile relied on Johnson's financial statement or to ascertain what other documents she may have "examined, deduced, inferred, asked about, looked at, gotten information from, or who she talked to and conferred with in approving the loan." Johnson apparently believes that Gile's consideration of anything other than the false financial statement destroys actual reliance under § 523(a)(2)(B)(iii).

Based on the foregoing authorities, Gile's testimony was not required as a matter of law to prove the Credit Union's actual reliance on the false financial statement. Whether Gile examined other documents or conferred with others in approving Johnson's loan is irrelevant to the actual reliance issue because the Credit Union was not required to rely *solely* on Johnson's false financial statement. A showing of partial reliance is sufficient to satisfy § 523(a)(2)(B)(iii). Furthermore, Johnson's false financial statement need only be a contributing cause or catalyst for the extension of credit.

■ Thus, the Credit Union could establish actual reliance without showing what other documents or persons Gile referred to in approving Johnson's loan. Gile's testimony concerning any other documents or persons relied on was unnecessary (and irrelevant) to establish actual reliance so long as there was evidence showing that Gile at least partially relied on Johnson's false financial statement. Due to her extensive involvement with the processing of the loan, Bishop was competent to and did testify as to whether there was reliance on the false financial statement.

■ Gile's reliance on the false financial statement could also be established without Gile's testimony based on the inference of reliance that arises when a financial statement is submitted in support of a credit application and credit is thereafter extended. Using this inference to establish reliance, the Credit Union need only present testimony from any competent witness (including Bishop or even Johnson) that Johnson submitted a false financial statement to the Credit Union and the Credit Union then extended credit to Johnson.

Thus, based on the foregoing, Gile's testimony was not required as a matter of law to establish actual reliance.

The Credit Union also argues that the bankruptcy court erred in ruling that the Credit Union failed to establish actual reliance by clear and convincing evidence.

■ Under Bankruptcy Rule 8013, I am required to defer to the bankruptcy court's findings on this factual issue unless they

are clearly erroneous. Arguably, the bankruptcy court's findings are clearly erroneous because in making its factual findings, it mistakenly believed that Gile's testimony was required to establish the Credit Union's reliance. Based on this mistake of law, the court erroneously discounted Bishop's testimony concerning facts related to actual reliance.

Accordingly, this case will be remanded to the bankruptcy court to allow it an opportunity to review the evidence in light of this opinion and to enter new findings of fact concerning the Credit Union's actual reliance.

B. *Bankruptcy Court Did Not Err in Finding that The Credit Union Failed to Prove Reasonable Reliance After It Denied Johnson's Motion for Involuntary Dismissal*

The Credit Union argues that the bankruptcy court erred in ruling that the Credit Union had failed to prove reasonable reliance because it had overruled Johnson's Motion for Involuntary Dismissal. According to the Credit Union, by denying the motion, the court had acknowledged that the Credit Union had established a prima facie case.

 Rule 41(b), Federal Rules of Civil Procedure, provides for the involuntary dismissal of a case upon the defendant's motion at the close of the plaintiff's case before the defendant presents any evidence. Involuntary dismissal is granted when plaintiff's evidence is insufficient, either as a matter of fact or law, to meet plaintiff's burden. *Lang v. Cone,* 542 F.2d 751, 754 (8th Cir.1976).[4]

 On a Rule 41(b) motion, the trial court *may* find the facts itself and *may* render judgment against the plaintiff if the court finds that the plaintiff has not met its burden in making out its case. *Id.* Whether the court proceeds to find the facts and

render judgment at the time the motion is made or declines to do so until the close of all the evidence is subject to the discretion of the court. *See* Fed.R.Civ.P. 41(b); *see also* 9 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2371 (1971). The trial court is not obligated to determine whether plaintiff's evidence is sufficient to meet its burden:

[A] denial of defendant's motion [to dismiss pursuant to Rule 41(b)] amounts to nothing more than a refusal to enter judgment at that time. At most it constituted a tentative and inconclusive ruling on the quantum of plaintiff's proof. Certainly it did not preclude the trial judge from later making considered findings and determinations not altogether consistent with his prior tentative ruling.

*Armour Research Found. v. Chicago, Rock Island & Pac. R.R.,* 311 F.2d 493, 494 (7th Cir.), *cert. denied,* 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 129 (1963).

The Credit Union's argument is entirely meritless. The Credit Union's counsel concedes that there is no authority to support its argument. Moreover, the Credit Union's counsel cites cases that are clearly contrary to the Credit Union's position. Also, the Credit Union concedes that the bankruptcy court's ruling on Johnson's Motion for Involuntary Dismissal was "tentative and does not preclude a trial judge from later making considered findings and determinations in favor of the defendant." Yet, counsel persists with its argument that the bankruptcy court erred in ultimately ruling against the Credit Union on the reliance element after it had denied Johnson's Motion to Dismiss.

I strongly urge counsel to carefully review Rule 11 and pay heed to its tenets. A review of the rule should remind counsel of their obligation to forward only arguments well-grounded in fact and law.

---

4. Rule 41(b) provides:
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the

facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

### VI. *Conclusion*

Accordingly, it is hereby ORDERED that this case is remanded to the bankruptcy court for further action in accordance with this order.